UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
NORFOLK DIVISION

| | |
|---|---|
| PEOPLE FOR THE ETHICAL TREATMENT OF ANIMALS, INC.<br>501 Front St.<br>Norfolk, VA 23510<br><br>DELCIANNA J. WINDERS<br>1536 16th St. N.W.<br>Washington, D.C. 20036<br><br>Plaintiffs,<br><br>v.<br><br>THE UNITED STATES DEPARTMENT OF AGRICULTURE<br>1400 Independence Avenue, S.W.<br>Washington, D.C. 20250,<br><br>ANIMAL AND PLANT HEALTH INSPECTION SERVICE<br>4700 River Road<br>Riverdale, MD 20737<br><br>Defendants. | Civil Action No. __2:18cv306__ |

**COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF**

1.      This is an action under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, as amended, to obtain access to information requested by Plaintiffs, People for the Ethical Treatment of Animals, Inc. ("PETA") and Delcianna J. Winders ("Ms. Winders"), from the Defendants, the United States Department of Agriculture ("USDA") and the Animal and Plant Health Inspection Service ("APHIS").

1

2. This lawsuit challenges the failure of the USDA and APHIS to comply with statutory deadlines and to disclose information in response to numerous FOIA requests submitted between December 2, 2016, through December 8, 2017, by PETA and by Ms. Winders that sought records related to the enforcement of the Animal Welfare Act ("AWA") by APHIS, a component of the USDA, and APHIS's compliance with the FOIA. PETA and Ms. Winders ask the Court to order immediate disclosure of all responsive records.

3. Plaintiffs seek expedited treatment of this Complaint pursuant to 28 U.S.C. § 1657.

## JURISDICTION AND VENUE

4. This Court has subject matter jurisdiction over this action and personal jurisdiction over the parties pursuant to 5 U.S.C. § 552(a)(4)(B) and 28 U.S.C. § 1331.

5. Venue is proper in this district pursuant to 5 U.S.C. § 552(a)(4)(B) and 28 U.S.C. § 1391(e).

## PARTIES

6. Plaintiff PETA is a Virginia non-stock corporation and animal protection charity pursuant to Section 501(c)(3) of the Internal Revenue Code, with its headquarters located at 501 Front Street, Norfolk, Virginia 23510. PETA is dedicated to protecting animals from abuse, neglect, and cruelty. PETA's charitable animal protection and advocacy work is injured by Defendants' actions. That injury will be redressed if it prevails in this action and the records at issue are immediately disclosed.

7. Plaintiff Delcianna Winders is currently Vice President and Deputy General Counsel of the PETA Foundation, just completed a position as a Visiting Scholar at the Elisabeth Haub School of Law at Pace University, and is the immediate past academic Animal Law &

Policy Fellow at Harvard Law School. She will also teach Animal Welfare Law at Vermont Law School this summer, and has been approached by numerous other law schools about teaching animal law, including the requirements and implementation of the AWA. Ms. Winders conducts research on, writes and teaches about, and disseminates information to the public and the media about, the Animal Welfare Act, compliance and non-compliance with that statute, and the USDA's implementation and enforcement (or lack thereof) of the AWA and the agency's implementing regulations. Ms. Winders and her work are injured by Defendants' actions. That injury will be redressed if she prevails in this action and the records at issue are immediately disclosed.

8. Defendant USDA is an agency of the United States within the meaning of 5 U.S.C. § 552(f)(1) and is headquartered at 1400 Independence Avenue, S.W., Washington, DC 20250. The USDA has possession, custody, and control over the information that the Plaintiffs seek.

9. Defendant APHIS is the division of the USDA that administers the AWA. As such, it has possession, custody, and control over the information that Plaintiffs seek. It is headquartered at 4700 River Rd., Riverdale, MD 20737.

## STATUTORY AND REGULATORY FRAMEWORK

10. The FOIA requires agencies of the federal government, upon request, to release information to the public, unless the agency demonstrates that one of nine specific statutory exemptions applies. 5 U.S.C. § 552(a), (b); 7 C.F.R. § 1.4.

11. Upon receiving a FOIA request, an agency has twenty working days to respond to the request. 5 U.S.C. § 552(a)(6)(A)(i); 7 C.F.R. § 1.7.

12. A requestor is deemed to have exhausted its administrative remedies, and may seek immediate judicial review of the matter, if the agency fails to comply with the twenty-day time limit. 5 U.S.C. § 552(a)(6)(C); 7 C.F.R. § 1.17.

13. An agency shall not assess any search or duplication fees when the agency fails to comply with this time limit. 5 U.S.C. § 552(a)(4)(A)(viii)(I).

14. To enforce these FOIA provisions, Congress provided for *de novo* judicial review. 5 U.S.C. § 552(a)(4)(B).

15. In such a case, "the burden is on the agency to sustain its action." *Id.*

16. Furthermore, the court may order the United States to pay reasonable attorneys' fees and costs incurred if the complainant substantially prevails. *Id.* § 552(a)(4)(E).

17. Regulations promulgated by the USDA specify that in the event the USDA fails to meet the deadlines imposed by the FOIA, the USDA "shall notify the requester, state the reasons for the delay, and the date by which it expects to dispatch a determination." 7 C.F.R. § 1.17.

18. The FOIA requires expedited processing of requests for records "in cases in which the person requesting the records demonstrates a compelling need," 5 U.S.C. § 552(a)(6)(E)(i)(I), and "in other cases determined by the agency," *id.* § 552(a)(6)(E)(i)(II). A "compelling need" exists when there is a "request made by a person primarily engaged in disseminating information, [and there is an] urgency to inform the public concerning actual or alleged Federal Government activity." *Id.* § 552(a)(6)(E)(v)(II).

19. "An agency shall process as soon as practicable any request for records to which the agency has granted expedited processing . . . . [F]ailure by an agency to respond in a timely manner to such a request shall be subject to judicial review . . . ." *Id.* § 552(a)(6)(E)(iii).

20. The USDA's FOIA regulations provide for expedited processing where there is "[a]n urgency to inform the public about an actual or alleged federal government activity, if made by an individual primarily engaged in disseminating information." 7 C.F.R. § 1.9(b)(2). Under this provision, "'[u]rgency' contemplates that the information has a particular value that will be lost if not disseminated quickly." *Id.*

21. In 1996, Congress passed a suite of FOIA reforms known collectively as the E-FOIA Amendments. 5 U.S.C. § 552, As Amended By Public Law No. 104-231, 110 Stat. 3048. These reforms were designed to address persistent problems with delays in the processing of FOIA requests. Despite the passage of more than two decades since they were enacted, the Defendants have not yet brought themselves into full compliance with the E-FOIA Amendments.

22. In 2016, the FOIA Improvement Act of 2016 was signed into law. 5 U.S.C. § 552, As Amended By Public Law No. 114-185, 130 Stat. 538. Among other things the Act amended the FOIA to provide that each agency, in accordance with published rules, shall make available for public inspection in an electronic format "copies of all records, regardless of form or format . . . that have been requested 3 or more times." FOIA Improvement Act of 2016, S. 337, 114th Cong. § 2 (2016). The Defendants have not yet brought themselves into full compliance with this mandate.

## STATEMENT OF FACTS

### Background

23. The AWA, codified in Chapter 54 of Title 7 of the U.S. Code, was enacted in 1966. As stated in the statute's Statement of Policy, the AWA's primary purposes are (1) to "insure that animals intended for use in research facilities or for exhibition purposes or for use as pets are provided humane care and treatment"; and (2) to "assure the humane treatment of

animals during transportation in commerce." 7 U.S.C. § 2131. The Statement of Policy further explains that "Congress further finds that it is essential to regulate . . . the transportation, purchase, sale, housing, care, handling, and treatment of animals by carriers or by persons or organizations engaged in using them for research or experimental purposes or for exhibition purposes or holding them for sale as pets or for any such purpose or use." *Id.*

24. To achieve its important remedial purposes—i.e., the protection of animals—the AWA requires the USDA to "promulgate standards" governing "the humane handling, care, treatment, and transportation of animals by dealers, research facilities, and exhibitors," which "shall include minimum requirements" for "handling, housing, feeding, watering, sanitation, ventilation, shelter from extremes of weather and temperatures, [and] adequate veterinary care." *Id.* § 2143(a). Those standards must also include requirements for "exercise of dogs," and "for a physical environment adequate to promote the psychological well-being of primates." *Id.* § 2143(a)(2)(B). As to animals used in research facilities, the standards must include requirements "for animal care, treatment, and practices in experimental procedures to ensure that animal pain and distress are minimized." *Id.* § 2143(a)(3)(A).

25. The USDA, through APHIS, enforces the AWA, and its implementing regulations, 9 C.F.R. §§ 1.1 – 4.11.

26. All facilities that use, sell, or transport animals covered by the AWA for regulated activities must be licensed or registered with APHIS. 7 U.S.C. § 2133. As part of its responsibility for implementing and enforcing the AWA, APHIS inspects regulated entities for compliance with minimum welfare standards. 7 U.S.C. § 2146(a). APHIS also receives complaints from the public for alleged AWA violations.

27.     If APHIS discovers that a facility is not meeting the AWA's minimum welfare standards it may take enforcement action. AWA enforcement actions include official warnings (sometimes referred to as 7060s, for the APHIS form on which they are issued), pre-litigation settlement agreements or stipulations (either monetary or non-monetary), referrals to the Office of the General Counsel for litigation, submissions of complaints to the USDA Office of Administrative Law Judges, and administrative orders and decisions resulting from such complaints.

28.     The USDA's own Office of Inspector General ("OIG") has issued audit after audit condemning the agency's inadequate enforcement of the AWA. USDA, OIG, APHIS Oversight of Research Facilities, Audit No. 33601-0001-41, page 2 of pdf (Dec. 2014), https://www.usda.gov/oig/webdocs/33601-0001-41.pdf (summarizing series of audits). A 2014 audit, for example, found that the agency did not follow its own criteria in closing dozens of cases involving animal deaths or other grave or repeat welfare violations, severely reduced and under-assessed penalties, and failed to ensure that experimental procedures on animals were adequately monitored, putting animals at risk. *Id*.

29.     A 2010 audit found that AWA enforcement was "ineffective" and penalties for violators were inappropriately reduced. *Id.* at 3 (citing USDA, OIG, APHIS Animal Care Program Inspections of Problematic Dealers, Audit 33002-4-SF (May 2010), https://www.usda.gov/oig/webdocs/33002-4-SF.pdf). As a result, the OIG found, violators considered the penalties "as a normal cost of business rather than a deterrent for violating the law." *Id.*

30.     A 2005 audit found that the USDA was not aggressively pursuing enforcement actions against violators of AWA and was assessing minimal monetary penalties, making

penalties "basically meaningless." USDA, OIG, APHIS Animal Care Program Inspection and Enforcement Activities, Audit. No. 33002-3-SF, pages 4-10 (Sept. 2005), https://www.usda.gov/oig/webdocs/33002-03-SF.pdf.

31.     Since these audits, the USDA appears to have further weakened, rather than strengthened, its enforcement of the AWA.  In fiscal year 2016 APHIS brought a total of 252 AWA enforcement actions, while in fiscal year 2017 this total dropped significantly—by nearly a third—to 173. APHIS, Animal Care Enforcement Summary (AWA and HPA) (Apr. 18, 2018), https://www.aphis.usda.gov/aphis/ourfocus/business-services/ies/ies_performance_metrics/ies-ac_enforcement_summary. Figures for the first half of fiscal year 2018, which saw a total of just 45 AWA enforcement actions, indicate that APHIS's AWA enforcement rate continues to fall precipitously. *See id.*

32.     Likewise, the few AWA enforcement actions that are being brought are less—not more--meaningful. The agency appears to have almost entirely stopped filing administrative complaints altogether—filing just two in fiscal year 2017 and just two in the first half of 2018 (as compared to twenty-three in fiscal year 2016)—instead relying on mere warnings in the vast majority of cases, and persisting in severely discounting penalties in the few cases where they are assessed at all. *See id.*

33.     For many years, Defendants routinely published all AWA enforcement actions on their website. However, after August 2016, the agency ceased posting new enforcement records, and on February 3, 2017, they deleted nearly a decades' worth of enforcement actions—thousands of records—from the site. In the public announcement about removing these records, Defendants instructed those seeking enforcement records to submit FOIA requests. USDA, *Updates to APHIS' Website Involving Animal Welfare Act and Horse Protection Compliance*

*Information*, (Feb. 3, 2017), https://content.govdelivery.com/accounts/USDAAPHIS/bulletins/184e0d0.

34. As set forth in greater detail below, plaintiffs PETA and Ms. Winders submitted one expedited FOIA request and sixteen other separate FOIA requests to Defendants from December 2, 2016, through December 8, 2017, for APHIS enforcement action records and records related to APHIS' enforcement action records, compliance with the E-FOIA Amendments, and FOIA Improvement Act of 2016.

35. Defendants have failed to meet their statutory obligations with respect to Plaintiffs' FOIA requests.

## PROCEDURAL HISTORY

### Defendants' Constructive Denial of Plaintiffs' FOIA Requests

*Ms. Winders' February 3, 2017, Expedited FOIA Request for Records Related to the Defendants Removal AWA Enforcement Records from Defendants' Website*

36. On February 3, 2017, Ms. Winders submitted a FOIA request to Defendants for all records related to the agency's decision to remove AWA-related records from its website. Due to the urgent need to inform the public about Defendants' sudden removal of thousands agency records that have been available online for many years with virtually no explanation, Ms. Winders requested expedited treatment of this request.

37. On February 6, 2017 the Defendants acknowledged receipt of the FOIA request and provided the case number 2017-APHIS-02080-F, but did not provide a substantive response to the request.

38. On February 17, 2017, due to the urgent need to inform the public of a change in Federal Government activity, the Defendants granted expedited consideration of this FOIA request, as well as a full fee waiver.

39. On January 19, 2018, nearly a year after the request had been submitted and expedited treatment granted, APHIS FOIA Specialist Mr. Reginald Sheppard stated that the request would still take "months to a year" to complete. On January 30, 2018, in response to a request to do so from Mr. Sheppard, Ms. Winders provided the order of agencies/programs within APHIS in which she would like to receive responsive records for first. While the USDA's Office of the General Counsel has provided Ms. Winders with a partial release of 1771 pages of records (which were all completely redacted) in response to a request to that sub-agency, APHIS has not provided a single record in response to Ms. Winders' request.

40. The urgent need to inform the public of a change in federal government activity still exists with these records, and it remains critical that these records be provided without further delay.

*PETA's December 2, 2016, FOIA Request for AWA Enforcement Actions*

41. On December 2, 2016, PETA submitted a FOIA request for "all AWA enforcement actions taken during the 2016 fiscal year, October 1, 2015 – September 30, 2016 for B and C licensees."

42. On December 12, 2016, the Defendants acknowledged receipt of the FOIA request and provided the case number 2017-APHIS-00906-F with a targeted response date of January 2, 2017, but did not provide a substantive response to the request.

43. PETA has not received any records in response to this request.

*PETA's December 9, 2016, FOIA Request for AWA Enforcement Actions*

44. On December 9, 2016, PETA submitted a FOIA request for "all AWA enforcement actions taken from October 1, 2016 – November 30, 2016 for all licensees."

45. On December 13, 2016, the Defendants acknowledged receipt of the FOIA request and provided the case number 2017-APHIS-01031-F with a targeted response date of January 9, 2017, but did not provide a substantive response to the request.

46. PETA has not received any records in response to this request.

*PETA's First February 10, 2017, FOIA Request for AWA Enforcement Actions*

47. On February 10, 2017, PETA submitted a FOIA request for "all AWA enforcement actions taken from December 1, 2016 – December 31, 2016 for all licensees."

48. On February 27, 2017, the Defendants acknowledged receipt of the FOIA request and provided the case number 2017-APHIS-02059-F with a targeted response date of March 13, 2017, but did not provide a substantive response to the request.

49. PETA has not received any records in response to this request.

*PETA's Second February 10, 2017, FOIA Request for AWA Enforcement Actions*

50. On February 10, 2017, PETA also submitted a FOIA request for "all AWA enforcement actions taken from January 1, 2017 – January 31, 2017 for all licensees."

51. On February 27, 2017, the Defendants acknowledged receipt of the FOIA request and provided the case number 2017-APHIS-02060-F with a targeted response date of March 13, 2017, but did not provide a substantive response to the request.

52. PETA has not received any records in response to this request.

*PETA's March 24, 2017, FOIA Request for AWA Enforcement Actions*

53. On March 24, 2017, PETA submitted a FOIA request for "all AWA enforcement actions taken from February 1, 2017 – February 28, 2017 for all licensees."

54. On April 5, 2017, the Defendants acknowledged receipt of the FOIA request and provided the case number 2017-APHIS-02971-F with a targeted response date of April 21, 2017, but did not provide a substantive response to the request.

55. PETA has not received any records in response to this request.

*PETA's April 6, 2017, FOIA Request for AWA Enforcement Actions*

56. On April 6, 2017, PETA submitted a FOIA request for "all AWA enforcement actions taken from March 1, 2017 – March 31, 2017 for all licensees."

57. On April 7, 2017, the Defendants acknowledged receipt of the FOIA request and provided the case number 2017-APHIS-03426-F with a targeted response date of May 4, 2017, but did not provide a substantive response to the request.

58. PETA has not received any records in response to this request.

*PETA's May 12, 2017, FOIA Request for AWA Enforcement Actions*

59. On May 12, 2017, PETA submitted a FOIA request for "all AWA enforcement actions taken from April 1, 2017 – April 30, 2017 for all licensees."

60. On May 15, 2017, the Defendants acknowledged receipt of the FOIA request and provided the case number 2017-APHIS-04252-F with a targeted response date of June 12, 2017, but did not provide a substantive response to the request.

61. PETA has not received any records in response to this request.

*PETA's June 1, 2017, FOIA Request for AWA Enforcement Actions*

62. On June 1, 2017, PETA submitted a FOIA request for "all AWA enforcement actions taken from May 1, 2017 – May 31, 2017 for all licensees."

63. On June 6, 2017, the Defendants acknowledged receipt of the FOIA request and provided the case number 2017-APHIS-04715-F with a targeted response date of June 29, 2017, but did not provide a substantive response to the request.

64. PETA has not received any records in response to this request.

*PETA's August 3, 2017, FOIA Request for AWA Enforcement Actions*

65. On August 3, 2017, PETA submitted a FOIA request for "all AWA enforcement actions taken from July 1, 2017 – July 31, 2017 for all licensees."

66. On August 4, 2017, the Defendants acknowledged receipt of the FOIA request and provided the case number 2017-APHIS-05905-F with a targeted response date of August 31, 2017, but did not provide a substantive response to the request.

67. PETA has not received any records in response to this request.

*PETA's September 8, 2017, FOIA Request for AWA Enforcement Actions*

68. On September 8, 2017, PETA submitted a FOIA request for "all AWA enforcement actions taken from August 1, 2017 – August 31, 2017 for all licensees."

69. On September 11, 2017, the Defendants acknowledged receipt of the FOIA request and provided the case number 2017-APHIS-06555-F with a targeted response date of October 6, 2017, but did not provide a substantive response to the request.

70. PETA has not received any records in response to this request.

*PETA's October 13, 2017, FOIA Request for AWA Enforcement Actions*

71. On October 13, 2017, PETA submitted a FOIA request for "all AWA enforcement actions taken from September 1, 2017 – September 30, 2017 for all licensees and registrants."

72. On October 16, 2017, the Defendants acknowledged receipt of the FOIA request and provided the case number 2018-APHIS-00296-F with a targeted response date of November 13, 2017, but did not provide a substantive response to the request.

73. PETA has not received any records in response to this request.

*PETA's First December 8, 2017, FOIA Request for AWA Enforcement Actions*

74. On December 8, 2017, PETA submitted a FOIA request for "all AWA enforcement actions taken from October 1, 2017 – October 31, 2017 for all licensees and registrants."

75. On December 8, 2017, the Defendants acknowledged receipt of the FOIA request and provided the case number 2018-APHIS-01356-F with a targeted response date of January 9, 2018, but did not provide a substantive response to the request.

76. PETA has not received any records in response to this request.

*PETA's Second December 8, 2017, FOIA Request for AWA Enforcement Actions*

77. On December 8, 2017, PETA also submitted a FOIA request for "all AWA enforcement actions taken from November 1, 2017 – November 30, 2017 for all licensees and registrants."

78. On December 8, 2017, the Defendants acknowledged receipt of the FOIA request and provided the case number 2018-APHIS-01358-F with a targeted response date of January 9, 2018, but did not provide a substantive response to the request.

79. PETA has not received any records in response to this request.

*Ms. Winders' January 9, 2017, FOIA Request for Records Regarding Defendants' Delay in Posting AWA Enforcement Records*

80. On January 9, 2017, Ms. Winders submitted a FOIA request for records regarding the delay in the USDA and APHIS posting enforcement actions.

81. On January 9, 2017, the Defendants acknowledged receipt of the FOIA request and provided the case number 2017-APHIS-01366-F, but did not provide a substantive response to the request.

82. Ms. Winders has not received any records in response to this request.

*Ms. Winders' May 31, 2017, FOIA Request for Records Pertaining to the Defendants' Compliance with the 1996 E-FOIA Amendments*

83. On May 31, 2017, Ms. Winders submitted a FOIA request for:

Any policies, procedures guidance, directives, or similar that APHIS has pertaining to complying with the 1996 E-FOIA amendments requiring affirmative online records disclosures, including but not limited to any procedures or policies in place for determining when records have been, or are likely to be requested repeatedly from the time period beginning January 1, 2015, and ending on the date on which this request is processed.

84. On May 31, 2017, the Defendants acknowledged receipt of the FOIA request and provided the case number 2017-APHIS-04683-F with a targeted response date of June 28, 2017, but did not provide a substantive response to the request.

85. Ms. Winders has not received any records in response to this request.

*Ms. Winders' July 2, 2017, FOIA Request for Records Related to the Defendants' Compliance with the FOIA Improvement Act of 2016*

86. On July 2, 2017, Ms. Winders submitted a FOIA request for:

Any policies, procedures, guidance, directives, or similar records that APHIS has pertaining to the FOIA Improvement Act of 2016's mandate that "Each agency, in accordance with published rules, shall make available for public inspection in an

electronic format . . . copies of all records, regardless of form or format . . . that have been requested 3 or more times," 5 U.S.C. s. 552(a)(2)(D)(ii)(II).

87. On July 3, 2017, the Defendants acknowledged receipt of the FOIA request and provided the case number 2017-APHIS-05290-F with a targeted response date of August 1, 2017, but did not provide a substantive response to the request.

88. Ms. Winders has not received any records in response to this request.

89. In each of PETA's above-mentioned FOIA requests, PETA requested a "non-profit" fee waiver under the FOIA based on its status as a non-profit public interest organization.

90. In each of Ms. Winders' above-mentioned FOIA requests, Ms. Winders also requested a fee waiver under the FOIA, due to her seeking the information in order to inform her forthcoming publications pertaining to the USDA's implementation of the AWA and transparency.

91. As of the date of this complaint, the Defendants have not disclosed a single agency record in response to any of PETA's above-mentioned FOIA requests. The Defendants, apart from the OGC's production of completely redacted records to one of Ms. Winders' above-mentioned FOIA requests, have not disclosed a single agency record in response to Ms. Winders' above-mentioned FOIA requests. The Defendants have also not informed PETA or Ms. Winders of the scope of the records that they will produce, or the scope of the records that they plan to withhold under any FOIA exemptions.

## COUNT I

### Violation of FOIA: Failure to Comply With Statutory Deadlines

92. Paragraphs 1-91 above are hereby incorporated by reference as if set forth fully herein.

93. As described above, Defendants' failure to respond to Plaintiffs' FOIA requests has violated the statutory deadlines imposed by the FOIA, 5 U.S.C. § 552(a)(6)(A)(i).

94. As a result of Defendants' unlawful delay and failure to comply with their statutory deadlines, the agencies have withheld responsive agency records from Plaintiffs in violation of the FOIA, *id.* § 552(a)(3)(A).

95. Plaintiffs are being irreparably harmed by reason of Defendants' FOIA violations, and Plaintiffs will continue to be irreparably harmed unless Defendants are compelled to conform their conduct to the requirements of the law.

96. Plaintiffs are entitled to declaratory and injunctive relief compelling the release and disclosure of the requested agency records.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs respectfully request that this Court:

  a. expedite consideration of this Complaint pursuant to 28 U.S.C. § 1657;

  b. enter an Order declaring that Defendants have wrongfully withheld the requested agency records;

  c. issue a permanent injunction directing Defendants to disclose to Plaintiffs all wrongfully withheld records;

  d. maintain jurisdiction over this action until Defendants comply with the FOIA and all orders of this Court;

  e. enter an order declaring the Plaintiffs are entitled to a full fee waiver under 5 U.S.C. § 555(a)(4)(A);

  f. award Plaintiffs their attorney fees and other litigation costs reasonably incurred in this action pursuant to 5 USC § 552(a)(4)(E); and

g. grant Plaintiffs such other and further relief as the Court may seem just and proper.

Respectfully submitted,

/s/ Jeffrey S. Kerr

Jeffrey S. Kerr
VA Bar No. 42122

PETA Foundation
1536 16th Street NW
Washington, DC 20036
Telephone: 202-540-2171
Fax: 202-540-2208
JeffK@PETAF.org

*Attorney for Plaintiffs*

Dated: June 07, 2018